```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**CITY OF NEW MARTINSVILLE,**
**WEST VIRGINIA,**

       Plaintiff,

v.                                              Civil Action No. 2:12-cv-1809

**THE PUBLIC SERVICE COMMISSION**
**OF WEST VIRGINIA,**

       Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>

       Pending is the motion to intervene as party-defendants by Monongahela Power Company ("Mon Power") and The Potomac Edison Company ("Potomac Edison" and together with Mon Power, "the Companies"), filed on September 13, 2012.  The motion is unopposed, although the plaintiff City of New Martinsville ("the City") on September 27, 2012 filed a response disputing certain factual assertions.  For the reasons set forth below, the court finds that the Companies meet the requirements for intervention as a matter of right and grants their motion.


                         I. Background

       This case arises from a dispute over ownership of West Virginia renewable energy credits.  The City is a municipal

corporation organized under the laws of West Virginia.  Compl. ¶ 13.  It owns and operates both a municipal electrical system serving approximately 1800 customers and a run-of-river hydropower facility known as the Hannibal Project.  Id. ¶ 14.  On April 1, 1986 the City and Mon Power entered into a long-term EEPA ("electric energy purchase agreement"), whereby Mon Power has purchased the energy and capacity generated at the Hannibal Project.  Compl. ¶ 16.

The defendant Public Service Commission of West Virginia ("the Commission") is an administrative agency of the State of West Virginia, having the "authority and duty to enforce and regulate the practices, services and rates of public utilities." W. Va. Code ¶ 24-1-1.  In 2009, the West Virginia legislature passed the Alternative and Renewable Energy Portfolio Act ("the Portfolio Act"), requiring the Commission to create a system of tradable renewable energy credits.  W. Va. Code § 24-2F-1-12.  The Portfolio Act awards credits to electric utilities that generate or purchase electricity from specified alternative and renewable energy resource facilities.  Id. § 24-2F-4(b).  It requires electrical utilities to "own an amount of credits equal to a certain percentage of electricity . . . sold by the electric utility in the preceding year to retail customers in West Virginia."  Id. § 24-2F-5(a).   Electric utilities must submit

Portfolio Standard Compliance Plans to the Commission for its review and approval. Compl. ¶ 9 (citing 150 C.S.R. § 34-8.1).

The Portfolio Act requires both the City and Mon Power, as electrical utilities, to own a certain amount of credits. Id. ¶¶ 31-32. The City's Hannibal Project, which has been certified as a qualified renewable energy resource facility under the Portfolio Act, provides one source of credits. Id. ¶ 26. The EEPA and a 2004 Amendment between Mon Power and the City, however, are silent regarding which entity owns the credits the Hannibal Project generates. Id. ¶ 33. Consequently, Mon Power and the City, on December 30, 2010 and January 3, 2011, respectively, both submitted Portfolio Standard Compliance Plans that claimed ownership of the Hannibal credits. Id. ¶¶ 34-35.

On February 23, 2011, the Companies filed a petition for declaratory relief with the Commission. Id. ¶ 36. The Commission granted the petition on November 22, 2011, ruling that the Companies own credits attributable to the Hannibal Project and two other non-utility generating projects.[1] Id. In effect, the Commission created a rule that a utility-purchaser, without additional compensation, owns credits attributable to an EEPA that

---

[1] One of these projects is the subject of concurrent litigation pending before this court as Morgantown Energy Associates v. Public Service Commission of West Virginia, No. 2:12-cv-6327.

predates the Portfolio Act and is silent respecting the credit's ownership.  Id. ¶ 63.  The City contends that the Commission's order is invalid because it contradicts the provisions of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), regulations adopted by FERC pursuant to PURPA, and FERC and court decisions interpreting and applying PURPA and the regulation.  Id. ¶ 11.

On December 22, 2011, the City filed an appeal of the Commission order with the West Virginia Supreme Court of Appeals.  Id. ¶ 43.  On June 11, 2012, subsequent to the City filing this action, the Supreme Court of Appeals affirmed the Commission's ruling.

On March 15, 2012, the City petitioned the Federal Energy Regulatory Commission ("FERC") to bring an enforcement action against the Commission to require compliance with PURPA.  In an order issued April 24, 2012, FERC found that "certain statements in the [Public Service Commission of] West Virginia Order are inconsistent with PURPA."  FERC Order ¶ 45.  It further stated that "PURPA does not address the ownership of [credits]" and that the "avoided cost rates" set by the terms of PURPA are not meant to compensate facilities for more than capacity and energy.  Id. ¶ 46-47.  It concluded that "[t]o the extent that the West Virginia Order finds that avoided-cost rates under PURPA also

compensate for [credits], the West Virginia Order is inconsistent with PURPA." Id. ¶ 47.

Despite these findings, FERC declined to exercise its discretionary enforcement authority. Id. ¶ 44. Under PURPA, when FERC declines to bring an enforcement action within 60 days of the filing of a petition, the petitioner may bring its own enforcement action against the state regulatory authority in the appropriate U.S. district court. 16 U.S.C. § 824a-3(h)(2)(B). Pursuant to that provision, the City filed the present action for declaratory and injunctive relief on June 1, 2012.

In the pending motion, the Companies argue that their putative property interest in the Credits makes them proper and necessary parties to this litigation and justifies intervention as of right, pursuant to Federal Rule of Civil Procedure 24(a). Mot. Intervene 1-2. Alternatively, the Companies contend that because their ownership is the central dispute in this case, permissive intervention is proper, pursuant to Rule 24(b).

II. Governing Standard

Federal Rule of Civil Procedure 24(a) provides intervention of right, on a timely motion, to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the

action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a). Tracking the language of the Rule, an application to intervene as of right must satisfy the following four requirements:

> (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

Houston Gen. Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999).

"[T]imeliness is a 'cardinal consideration' of whether to permit intervention."  Moore, 193 F.3d at 839 (quoting Brink v. DaLesio, 667 F.2d 420, 428 (4th Cir. 1981)).  Its determination depends upon "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene."  Gould v. Alleco, Inc., 883 F.2d 281, 286 (4th Cir. 1989).  In weighing these elements, "wide discretion [is] afforded the district courts."  Id.  Because a would-be intervener as of right "'may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive."  Mtn. Top Condo. Ass'n v. Dave Stabbert Master Bldg., Inc., 72 F.3d 361 (3d

Cir. 1995) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1916, at 424 (1986)).

Rule 24(a) does not specify the nature of the interest necessary to satisfy the second requirement, but "the Supreme Court has recognized that '[w]hat is obviously meant . . . is a significantly protectable interest.'" Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991) (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)). The Fourth Circuit has held that an interest contingent on the outcome of other litigation is a significantly protectable interest. Id.

To establish impairment, the third requirement, "a party need not prove that he would be bound in a res judicata sense by any judgment in the case." Spring Const. Co. v. Harris, 614 F.2d 374, 377 (4th Cir. 1980). It is sufficient that the "disposition of a case would, as a practical matter, impair the applicant's ability to protect his interest in the transaction." Id.

A movant satisfies the fourth requirement "if it is shown that representation of its interest 'may be' inadequate." United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y, 819 F.2d 473, 475 (4th Cir. 1987) (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)). The movant's burden in making this showing is "'minimal.'" Id. (citing Trbovich, 404 U.S. at 538 n.10).

Guiding the court's analysis is the principle that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" Feller v. Brock, 802 F.2d 722, 729 (4th Cir. 1986) (quoting Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967)).

### III. Discussion

The court finds that the Companies satisfy the requirements to intervene as a matter of right, pursuant to Rule 24(a). First, the motion is timely. The Companies moved to intervene only two days after the court entered the scheduling order for this case. They represent that no discovery has occurred, Mem. Supp. Mot. Intervene 5, and the absence of opposition indicates that intervention will not unduly prejudice either of the existing parties.

Second, the Companies undoubtedly have an interest in the renewable energy credits which comprise the subject matter of the litigation. The Companies have a tenable claim of ownership rights to the Hannibal credits, as indicated by the Commission's November 22, 2011 determination and the West Virginia Supreme Court of Appeals June 11, 2012 affirmation.

Third, the outcome of this action would impair or impede the Companies' ability to protect its interests in the Credits. Should the City prevail, the Commission determination would be voided and the Companies would lose their ownership rights to the Hannibal credits.

Finally, the Commission may not adequately represent the Companies' interest in the litigation. While the Commission's and Companies' interests are generally aligned, their interests diverge in important ways. The court finds persuasive the Companies' argument that its approximately $50 to $100 million in property interests creates an incentive for litigation beyond that of the Commission. Cf. Teague v. Bakker, 931 F.2d 259, 262 (4th Cir. 1991) (finding the 'adequate representation' prong satisfied where financial constraints created "a significant chance that [current parties] might be less vigorous than the . . . Intervenors in defending their claim"). Further, the Companies are likely correct that "[p]olitical realities, the public interest, the cost of litigation, and the desire to settle are not the same for the Companies . . . as they are for the [Commission]." Mem. Supp. Mot. Intervene 10. The Companies have thus made the required minimal showing that representation may be inadequate.

The Companies having satisfied each of the requirements for intervention as of right, it is accordingly ORDERED that the motion to intervene be, and it hereby is, granted.  Because the Companies are entitled to intervene as a matter of right, the court need not address their alternate argument regarding permissive intervention.

The Clerk is directed to file the Companies' proposed Answer in Intervention this same day.  The Clerk is further directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: December 21, 2012

_____
John T. Copenhaver, Jr.
United States District Judge